**United States District Court
for the Southern District of Georgia
Augusta Division**

FILED
U.S. DIST. COURT
BRUNSWICK DIV.
2005 OCT -6  A 10 03
CLERK

| | | |
|---|---|---|
| KENNETH DEAN KING, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| KENNAMETAL, IP.G., | : | |
| Defendant. | : | NO. CV104-124 |

### O R D E R

Plaintiff, Kenneth D. King, filed suit alleging that Defendant, Kennametal, IP.G. ("Kennametal"), discriminated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, et seq. Plaintiff further avers that he was improperly denied long term disability benefits. Before the Court is Defendant's motion seeking summary judgment, to which Plaintiff has filed a response.[1] For the

---

[1] The Court construes Plaintiff's response, titled "Plaintiffs motion to dismiss Defendants Motion for Summary Judgment due to incomplete evidence and lack of evidence of Material facts pertaining to the case," as Plaintiff's response in opposition to Defendant's summary judgment motion.

reasons stated below, Defendant's motion will be **GRANTED IN PART and DENIED IN PART**.

## FACTS

Plaintiff began his employment with Kennametal as a CNC operator in 1992. On October 14, 2002, following a diagnosis of bi-polar disorder, King took a leave of absence under the Family and Medical Leave Act ("FMLA"), which was exhausted on January 10, 2003. On January 14, 2003, Plaintiff was released to return to work for not more than four hours per day. Defendant accommodated this restriction by permitting Plaintiff to work four hour days from January 15, 2003, until February 3, 2003, when he was released to return to his normal eight hour day schedule. On February 18, 2003, Plaintiff was sent home after he was reported sleeping on the job. On February 24, 2003, Plaintiff's doctor placed him on medical leave with no possible return date indicated.

During his absence, Plaintiff's CNC position was eliminated due to reduced production. Upon his notice of return on March 14, 2003, Plaintiff was offered a warehouse position Kennametal had held open for him. He declined the

offer on March 17, 2003.[2] His physician subsequently extended his no work status and Plaintiff has not returned to work since that date.

Plaintiff received short-term disability benefits for the first twenty-six weeks that he remained out of work. Additionally, Defendant continued to maintain Plaintiff on its health plan for over one year at Defendant's expense.

At the time he was hired, Plaintiff chose not to enroll in the long term disability program ("LTD"). When Plaintiff attempted to enroll in 1997, the LTD insurance carrier, Unum Life, required him to complete an Application and Proof of Insurability. Plaintiff disclosed his diabetes on the documents and LTD coverage was denied.

On October 3, 2002, Plaintiff again attempted to enroll in the LTD plan following employee benefit education classes during open enrollment. Plaintiff completed enrollment on Kennametal's on-line registration program. He did not provide a Proof of Insurability to MetLife, the current LTD insurance carrier. When MetLife's LTD insurance policy became effective

---

[2] A dispute exists as to how long the offer for the warehouse position remained open after the rejection. Plaintiff contends that he attempted to accept the position on March 21, 2003, and was advised it was no longer available. Defendant contends the offer remained open until June 2003.

on January 1, 2003, Kennametal began deducting LTD premiums from Plaintiff's paycheck.

After Plaintiff exhausted his short term disability benefits, Kennametal's human resource manager discussed the LTD benefits program with Plaintiff. Kennametal contends that it was at this time that it discovered Plaintiff had never submitted a Proof of Insurability. As a result, Kennametal attempted to refund the $35.66 that had been deducted from Plaintiff's paycheck. Plaintiff refused to cash the check and returned it to Kennametal.

Plaintiff filed the instant suit on August 9, 2004. In addition to alleging that Kennametal discriminated against him in violation of the ADA, Plaintiff avers that he was improperly denied long term disability benefits.

## DISCUSSION

Summary judgment is appropriate when no genuine issues remain and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c). In so doing, all facts and reasonable inferences are to be construed in favor of the non-moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962); Sweat v.

AO 72A
(Rev. 8/82)

Miller Brewing Co., 708 F.2d 655, 656 (11th Cir. 1983). The party opposed to the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

### I. ADA Claims

Defendant contends that it is entitled to summary judgment on Plaintiff's ADA claim because he is not a "qualified individual" within the meaning of the Act. Defendant further contends that even were the Court to determine that Plaintiff was a "qualified individual," Plaintiff has offered no reasonable accommodation and rejected the reasonable accommodation offered by Kennametal.

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities . . . ." 42 U.S.C. 12101(b)(1). The Act provides that employers shall not discriminate against qualified individuals with a disability because of the disability. 42 U.S.C. § 12112(a). Additionally, in enacting the ADA, Congress imposed an affirmative duty on employers to

reasonably accommodate individuals with disabilities. See Morisky v. Broward County, 80 F.3d 445, 447 (11th Cir. 1996) (citing 42 U.S.C. § 12112(b)(5)(A)); see also Harris v. H & W Contracting Co., 102 F.3d 516, 519 (11th Cir. 1996).

In order to establish a prima facie case of disability discrimination, the plaintiff must establish that: (1) he is disabled; (2) he is a "qualified individual"; and (3) he was discriminated against because of his disability. Harris, 102 F.3d at 519; Wood v. Green, 323 F.3d 1309, 1312 (11th Cir.), cert. denied, 540 U.S. 982, 124 S. Ct. 467, 157 L.Ed.2d 373 (2003).

The ADA defines a "qualified" person as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position [the] person holds or desires." Mears v. Gulfstream Aerospace Corp., 905 F. Supp. 1075, 1080 (S.D. Ga. 1995), aff'd, 87 F.3d 1331 (11th Cir. 1996) (citing 42 U.S.C. § 12111(8)). "Essential functions" are the fundamental job duties of a position that an individual with a disability is actually required to perform. See 29 C.F.R. § 1630.2(n)(2)(1). In determining whether a function is essential,

> consideration shall be given to the employer's judgment . . . and if an employer has prepared a

AO 72A
(Rev. 8/82)

> written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8). A job function also may be essential if there are a limited number of employees among whom performance of the job can be distributed. Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000) (citing 29 C.F.R. § 1630.2(n)(2)(ii)). Thus, Plaintiff "must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can perform the essential functions of his job with a reasonable accommodation." Davis v. Fla. Power & Light Co., 205 F.3d 1301, 1305 (11th Cir.) (citing Holbrook v. City of Alpharetta, 112 F.3d 1522, 1526 (11th Cir. 1997)), cert. denied, 531 U.S. 927, 121 S. Ct. 304, 148 L.Ed.2d 244 (2000). Accordingly, if Plaintiff "is unable to perform an essential function of his . . . job, even with an accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA." See Davis, 205 F.3d at 1305 (citation omitted).

It is well established that regular attendance can be an essential function of most jobs. Id.; Jackson v. Veterans Admin., 22 F.3d 277, 278-79 (11th Cir.) (employee with numerous sporadic absences not "otherwise qualified" under the

AO 72A
(Rev. 8/82)

Rehabilitation Act), reh'g denied, 30 F.3d 1500 (11th Cir.), cert. dismissed, 513 U.S. 1052, 115 S. Ct. 657, 130 L.Ed.2d 560 (1994); Wood v. Green, 323 F.3d at 1309. Sister courts have held similarly that a plaintiff with a total disability or with numerous sporadic absences cannot perform the essential functions of his job because he cannot show that he can maintain a regular and reliable level of attendance at his job. See Tyndall v. Nat'l Educ. Ctrs., 31 F.3d 209, 213 (4th Cir. 1994) (an employee must be willing and able to demonstrate, for an ADA claim, the skills necessary to perform the job in question by coming to work on a regular basis); Law v. United States Postal Serv., 852 F.2d 1278, 1279-80 (Fed. Cir. 1988) (attendance is a minimum function of any job); Beauford v. Father Flanagan's Boys' Home, 831 F.2d 768, 771 (8th Cir. 1987) (because plaintiff conceded total disability and, therefore, was unable to perform essential functions of her job, the Court held she did not meet the prerequisites for protection under the provisions of the Rehabilitation Act), cert. denied, 485 U.S. 938, 108 S. Ct. 1116, 99 L.Ed.2d 277 (1988); Carr v. Reno, 23 F.3d 525, 529 (D.C. Cir. 1994) (holding that "coming to work regularly" is an "essential function"); Johnston v. Morrison, Inc., 849 F. Supp. 777, 779 (N.D. Ala. 1994) (holding under ADA

AO 72A
(Rev. 8/82)

employee's inability to work necessary hours justified termination); EEOC v. AIC Sec. Investigation, 820 F. Supp. 1060, 1064 (N.D. Ill. 1993) (for the purposes of an ADA claim, "attendance is necessary to any job . . . ."); Walders v. Garrett, 765 F. Supp. 303, 309 (E.D. Va. 1991) (granting summary judgment on Rehabilitation Act claim for the employer because the plaintiff could not work due to her Chronic Fatigue Syndrome; "few would dispute that, in general, employees cannot perform their job successfully without meeting some threshold requirement of both attendance and regularity."), aff'd, 956 F.2d 1163 (4th Cir. 1992); Santiago v. Temple University, 739 F. Supp. 974, 979 (E.D. Pa.1990) ("Attendance is necessarily the fundamental prerequisite to job qualification"), aff'd, 928 F.2d 396 (3d Cir. 1991); Wimbley v. Bolger, 642 F. Supp. 481, 485 (W.D. Tenn. 1986) (an employee who "does not come to work cannot perform any of his job functions, essential or otherwise . . . ."), aff'd, 831 F.2d 298 (6th Cir. 1987).

The Court concludes that Plaintiff has failed to demonstrate that he is a "qualified individual" as required to establish a prima facie discrimination claim under the ADA. Plaintiff took a twelve week leave of absence under the Family and Medical Leave Act from October 14, 2002, to January 10,

2003[3]. Only a month after returning to work, Plaintiff took a second medical leave of absence on February 24, 2003, after being sent home for sleeping on the job, with no return date indicated. Plaintiff was again released to return to work on March 14, 2003, and shortly thereafter, a third medical leave of absence was taken through March 24, 2003. At that time Plaintiff claimed he was unable to work, and has not attempted to return to work since. The undisputed evidence shows that Plaintiff cannot maintain a regular level of attendance at his job. Thus, the Court finds that Plaintiff is not a "qualified individual with a disability" because he cannot perform the essential functions of his position.

Even were the Court to have found that he was a "qualified individual," Plaintiff failed to identify a reasonable accommodation that would have enabled him to perform the essential functions of a CNC operator. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112 (11th Cir. 1993) (Under Rehabilitation Act plaintiff must describe reasonable accommodation and exactly how it would enable him to perform essential

---

[3] While Plaintiff did not return to work until January 14, 2003, he exhausted his twelve week of FMLA leave on January 10, 2003.

functions).[4] Reasonable accommodation includes modifications or adjustments to the work environment or the manner in which the position is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position. 29 C.F.R. § 1630.2(o)(1)(ii). Plaintiff appears to argue that Kennametal discriminated against him by failing to hold his CNC position open while he was out on medical leave. In Wood, the Eleventh Circuit specifically rejected this argument in holding that a request to hold a job indefinitely was not a reasonable accommodation under the ADA. See Wood, 323 F.3d at 1313.

Furthermore, evidence in the record demonstrates that Kennametal attempted to accommodate Plaintiff's disability. Kennametal permitted Plaintiff to return to his CNC position on a part time basis following exhaustion of his FMLA leave until Plaintiff was able to resume his regular schedule. Defendant did not terminate his employment when Plaintiff was reported sleeping on the job, but sent him home until he was able to gain control of his drowsiness. Defendant held a

---

[4] Rehabilitation Act case law is applicable to ADA analysis. In the Interpretive Guidance on Title I of the ADA the EEOC states: The range of employment decisions covered by this nondiscrimination mandate is to be construed in a manner consistent with the regulations implementing § 504 of the Rehabilitation Act of 1973.

11

position in the warehouse open for Plaintiff when his CNC position was eliminated while he was again out on medical leave. Plaintiff, however, rejected the offered warehouse position because it was at a lower rate of pay. Kennametal's efforts to accommodate Plaintiff's disability went beyond that required under the ADA.

## II. <u>ERISA Claim</u>

Defendant contends that it is entitled to summary judgment on Plaintiff's ERISA claim because Kennametal is not the proper defendant. Defendant further contends that even were the Court to find it was a proper party, the case should be remanded to the plan administrator to determine whether Plaintiff is eligible for benefits. Finally, Defendant argues that the claim should be dismissed for failure to exhaust available remedies.

### A. Proper Defendant

ERISA provides participants and beneficiaries with standing to bring civil actions for the recovery of benefits "due . . . under the terms of [the] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights

AO 72A
(Rev. 8/82)

to future benefits under the terms of the plan . . ." 29 U.S.C. § 1132(a)(1)(B). The proper party defendant in an action seeking benefits under ERISA is the party that controls the administration of the plan. <u>Garren v. John Hancock Life Ins. Co.</u>, 114 F.3d 186, 187 (11th Cir. 1997) (citing <u>Daniel v. Eaton Corp.</u>, 839 F.2d 263, 266 (6th Cir.)), <u>cert. denied</u>, 488 U.S. 826, 109 S. Ct. 76, 102 L.Ed.2d 52 (1988). Therefore, an employer that administers the plan can be held liable for ERISA violations. <u>Rosen v. TRW, Inc.</u>, 979 F.2d 191, 193-94 (11th Cir. 1992). Proof of who is the plan administrator may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document. <u>See id.</u> at 193. Thus, the Court must determine whether Defendant had sufficient decisional control over the claim that would qualify it as the claim administrator under <u>Rosen</u>. <u>See</u> <u>Hamilton v. Allen-Bradley Co., Inc.</u>, 244 F.3d 819, 824 (11th Cir. 2001).

Defendant has offered evidence supporting its position that it is not the plan administrator of the LTD plan. Defendant asserts that Kennametal Welfare Benefit Plan's long term disability benefit is fully insured by MetLife, who pays

AO 72A
(Rev. 8/82)

all claims submitted under the LTD insurance policy. As part of the insurance agreement with MetLife, Kennametal testified that it is required to completely delegate its discretionary authority to administer any and all LTD claims to MetLife.

Plaintiff, however, has similarly offered evidence supporting his position that Defendant retained some degree of decisional control over the LTD plan. Plaintiff has testified that he went through the human resource manager in order to submit his claim for LTD benefits. The human resource manager advised Plaintiff that he was being placed on administrative leave pending "corporate review" of his long term disability benefit eligibility. Furthermore, the undisputed facts show that LTD premiums were retained from Plaintiff's paycheck and that it was Kennametal, through its labor counsel, not MetLife, that advised Plaintiff he was not enrolled in the LTD program. Reviewing this evidence in the light most favorable to Plaintiff, genuine issues exists as to the extent of Defendant's decisional control over his LTD claim.[5] The

---

[5] The Court notes that even were it to determine that Defendant lacked decisional authority over the LTD plan, summary judgment may not be proper on the ERISA claim because Plaintiff has arguably alleged that Defendant breached its fiduciary duty. See Hamilton v. Allen-Bradley Co., Inc., 244 F.3d 819, 825 (11th Cir. 2001) ("Even though it is true that the original complaint did not contain the specific words 'breach of fiduciary duty' or 'truthful' information, [Plaintiff's] complaint outlined sufficient facts to put [his employer] on notice of such a claim.").

Court's conclusion that Kennametal is a properly named defendant in Plaintiff's ERISA claim does not mean that MetLife, as the LTD insurance carrier, should not also be named as a party to this action. Thus, the Court will permit Plaintiff to amend his complaint and add MetLife as a defendant in this action.

### B. Failure to Exhaust Available Remedies

Defendant further argues that Plaintiff's ERISA claim should be dismissed because Plaintiff has failed to exhaust his available remedies. "It is well-established law in this circuit that plaintiffs in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court." HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co., 240 F.3d 982, 992 (11th Cir. 2001) (quoting Springer v. Wal-Mart Assocs.' Group Health Plan, 908 F.2d 897, 899 (11th Cir. 1990)), reh'g denied, 254 F.3d 77 (2001); Counts v. Am. Gen. Life & Accident Ins. Co., 111 F.3d 105, 108 (11th Cir. 1997). However, a district court has the sound discretion "to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate," or where a claimant

is denied "meaningful access" to the administrative review scheme in place. <u>Perrino v. S. Bell Tel. & Tel. Co.</u>, 209 F.3d 1309, 1315 (11th Cir. 2000) (citations omitted).

Defendant urges the Court to dismiss Plaintiff's LTD claim because he failed to file an administrative appeal. The documents sent to Plaintiff's attorney in November 2003 set forth the procedure for appealing denial of benefits by MetLife. It was not MetLife, however, but Kennametal, who advised Plaintiff that he was ineligible for LTD benefits. Despite retaining LTD premiums from Plaintiff's paycheck, it was Kennametal that conducted a "corporate review" and determined that Plaintiff was never enrolled in the LTD program because he did not submit the requisite Proof of Insurability. Thus, until a determination as to whether Plaintiff was enrolled in the LTD program is made, the Court is unconvinced that resort to an administrative appeal to MetLife would render an adequate remedy in the instant case.

## C. Remand to Plan Administrator

Finally, Defendant contends that the action should be remanded to the plan administrator in order to develop a record for the Court to review. "As a general matter a court should

not resolve the eligibility question on the basis of evidence never presented to [an ERISA plan's administrator] but should remand to the [administrator] for a new determination." Jett v. Blue Cross & Blue Shield of Ala., Inc., 890 F.2d 1137, 1140 (11th Cir. 1989) (quoting Wardle v. Cent. States, S.E. & S.W. Areas Pension Funds, 627 F.2d 820, 824 (7th Cir. 1980), cert. denied, 449 U.S. 1112, 101 S. Ct. 922, 66 L.Ed.2d 841 (1981)).

It is undisputed that MetLife has never been afforded an opportunity to make any factual findings regarding Plaintiff's claim. However, as previously discussed, the issue of whether Plaintiff was ever enrolled in the LTD plan must first be resolved before the eligibility issue may properly be addressed. Furthermore, even were the Court inclined to agree with Defendant that MetLife, not the Court, should have the opportunity to assess Plaintiff's claims in the first instance, remand is not an available remedy at this time because MetLife is not a party to this action.

## CONCLUSION

The Court has read and considered the positions of all parties to this action. For the reasons set forth above,

Defendant's summary judgment motion (Doc. No. 41) is **GRANTED IN PART and DENIED IN PART**.

Defendant's request that the Court grant summary judgment in its favor on Plaintiff's ADA claim is **GRANTED**. Defendant's request that the Court grant summary judgment in its favor on Plaintiff's LTD claim is **DENIED**.

**SO ORDERED** this ____6th____ day of October, 2005.

                                                                    _____
                                                                    JUDGE, UNITED STATES DISTRICT COURT
                                                                    SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)